UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL HARVEL,<br><br>Defendant. | Case No. 2:21-cr-00005<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

## MEMORANDUM ORDER

Defendant Michael Harvel moved to reopen the hearing on the United States' motion for pretrial detention pursuant to 18 U.S.C. § 3142(f) for the purpose of introducing new evidence. (Doc. No. 77.) The Magistrate Judge held a hearing on Harvel's motion on June 15, 2022. At the conclusion of the hearing, the Magistrate Judge denied Harvel's motion and declined to reopen the detention hearing (Doc. No. 80). This Order memorializes the decision announced on the record at the conclusion of the June 15, 2022 hearing.

**I.     Background**

Harvel is charged by superseding indictment (Doc. No. 46) with four counts of felony violation of rights under color of law involving kidnapping and bodily injury, one count of felony violation of rights under color of law involving aggravated sexual abuse, and five misdemeanor counts of violation of rights under color of law, all charged under 18 U.S.C. § 242.[1] These charges stem from Harvel's employment as Director of the Cumberland County Solid Waste Department and include allegations that Harvel raped and sexually assaulted women as they completed court-

---

[1]     The superseding indictment also charged one count of kidnapping under 18 U.S.C. § 1201(a). (Doc. No. 46.) That count was dismissed on the United States' motion as untimely. (Doc. No. 74.)

ordered community service hours or worked as paid employees under his supervision. (Doc. No. 46.)

At the conclusion of a hearing on the United States' motion for pretrial detention that took place on July 21 and 22, 2022, the Magistrate Judge made the following findings regarding the nature and circumstances of Harvel's charges:

> The victims allege that between 2015 and 2018 [Harvel] subjected them to unwanted sexual contact in the workplace. These women did not all work for the recycling center at the same time, and we've heard testimony that they do not all know each other.
>
> The United States has offered the testimony of FBI Task Force Agent Al Seitner regarding statements that were given by Victims 1 through 7 in interviews with law enforcement.
>
> Victim 1 alleged that [Harvel] asked her to go with [him] from the main facility to an off-site location where another employee was working; that [Harvel] asked the other employee to leave, then locked a door and bent Victim 1 over a table, forced [his] had up her skirt, fondled her breast and forced her to touch [his] genitals. She resisted and sustained bruises on her body.
>
> Victim 2 alleges that [Harvel] contacted her on a day off, picked her up from her home and took her to a landfill that was not in use. The landfill was in a rural area with poor cell phone service. She alleges that [Harvel] took her to an unused building, bent her over a table, pulled down her pants and had sex with her against her will.
>
> Victim 3 further states that on another occasion [Harvel] took her into an office at the recycling center, turned off the lights, forced her over a table and penetrated her vagina with [his] penis.
>
> Victims 3, 4, 6, and 7 allege that in their course of employment at the recycling center, [Harvel] subjected them to unwanted sexual conduct, including forcing [his] hands down their pants, touching their breasts and vaginas outside their clothing and other conduct.
>
> Victim 5 alleges that [Harvel] exposed her vagina by pulling down her pants and underwear after asking her about a tattoo on the lower part of her stomach.
>
> Agent Seitner testified that each of these women stated that this contact was unwanted. Each stated that she felt distraught, disgusted and ashamed afterwards, and that they did not report this conduct because [Harvel] had threatened to fire

2

them if they did, and they doubted their ability to get other jobs because of their criminal records or histories of drug abuse and because [Harvel is] a well-respected and well-connected member of the community.

Agent Seitner testified that he had interviewed a total of 15 women who allege similar conduct, including the seven victims who are identified in the indictment.

The nature and the circumstances of these charged offenses, therefore, includes alleged rape and forced sexual conduct. This is violent conduct in violation of the victim's safety and bodily integrity. And the nature and circumstances of the alleged conduct, therefore, weighs in favor of pretrial detention on the [basis] of safety.

(Doc. No. 32.)

The Magistrate Judge found the weight of the evidence of danger—all offered in the testimony of Agent Seitner based upon his personal knowledge of victim interviews—to be "relatively strong." (*Id.*)

The Magistrate Judge made the following findings regarding Harvel's personal history and characteristics that are relevant to the motion to reopen the detention hearing:

[Harvel] offered testimony from nine witnesses, all family members, close friends and former colleagues, all of whom praised [Harvel's] character and described [him] as a man who is devoted to [his] family and to [his] community.

[Harvel was] 59 years old. [He is] a near life-long resident of Cumberland County, Tennessee. [He has] been married to [his] wife Rafetta for almost 41 years, and she describes a happy and devoted marriage. [He has] two children and six grandchildren with whom [he maintains] close relationships. Almost all of [his] extended family lives in Crossville and [his] sister and [his] aunt testified that [he is] relied upon by older family members and family members who are in poor health.

. . .

[Harvel offered] testimony that [he has] Type 2 diabetes, which [he] treat[s], according to a medical health summary, with diet, exercise and medication. The diabetes has caused an ulcer on [his] right foot and the health summary provided states that [he is] treating that ulcer by performing foot self-exams several days a week.

. . .

3

> [The only] record of state charges that [Harvel is] facing . . . arise out of events that are related to [his] charges in this court. Those charges include one count of misdemeanor assault, two counts of felony sexual battery and one count of felony official misconduct.
>
> [Harvel has] been on bond for those charges since February of 2018 and [he has] had no violations of [his] bond conditions. [He has] appeared at every court proceeding that has happened . . . on [his] state charges for which [he has] been required to appear. [Harvel's] personal history and characteristics, therefore, weigh in favor of release.

(*Id.*)

Weighing these factors together, the Magistrate Judge considered whether there were conditions of pretrial release that would reasonably assure Harvel's appearance as required and would not endanger the safety of any other person or the community. The Magistrate Judge found that the United States had not met its burden to show by a preponderance of the evidence that release with appropriate conditions would not assure Harvel's appearance at future proceedings. Regarding the safety of any other person or the community, the Magistrate Judge made the following findings:

> The conduct that is alleged in the indictment is violent. It includes rape and sexual assault.
>
> In the case of Victim 2, that conduct is alleged to have taken place after she had been physically isolated; first in a remote location and second in a locked, dark office. The alleged conduct also includes threats of retaliation if the victims came forward to report the conduct.
>
> There were no weapons involved in any of the allegations. The alleged conduct was not random. All of the victims have an employment relationship with [Harvel].
>
> The last alleged [act] took place in December of 2017, and [Harvel was] charged by the state in February of 2018 . . . [Harvel has] been on bond since that time and [has] complied with all of the terms of [his] release.
>
> . . .

> In this case we have testimony from Agent Seitner that four or five of the identified victims have contacted the FBI stating that they are afraid for their safety if Mr. Harvel is released, including one victim who has stated that Mr. Harvel drove past her home repeatedly, conduct that she perceives as a threat. Mr. Harvel disagrees with that allegation.
>
> Defense counsel argues, and it is a persuasive argument, that the fact that Mr. Harvel has been on successful release for more than three years is determinative; that if he could follow those conditions related to his state charges, he can follow any conditions that [this Court] might impose successfully.
>
> But this is a different case and [this Court has] a different legal standard to follow than the state court did in setting bail. In the state charges, there are two alleged victims. In this case, there are seven. In the state charges, they allege sexual battery and assault. The charges in this court involve allegations including rape and kidnapping.
>
> The state charges allege official misconduct, the federal charges allege violations of constitutional rights under color of law. The state charges are low-level felonies and a misdemeanor offense. These federal charges carry up to a maximum sentencing range of a life sentence.
>
> These charges are as serious as any charges that [are tried] in this court. And for that reason and for those . . . previously stated, [the Court finds] that the United States has shown by clear and convincing evidence that there are not conditions of release that can reasonably assure the safety of any other person or the community if Mr. Harvel remains on release before trial.

(Doc. No. 32.)

Harvel moved to revoke the detention order and for pretrial release. (Doc. No. 31.) Conducting a *de novo* review of the Magistrate Judge's decision, Judge Campbell concluded "that Mr. Harvel's detention pending trial is warranted because no conditions of release can assure the safety of the community." (Doc. No. 38.) Specifically, Judge Campbell found that

> the victims still live in the community where Mr. Harvel seeks to be released, and that several have expressed fear for their own safety and retaliation if Mr. Harvel were to be released pending trial. One victim specifically expressed fear for her safety to the Government because Mr. Harvel had driven past her house multiple times. The evidence of dangerousness and the nature and seriousness of the risk of danger to the victims presented by Mr. Harvel's release weigh in favor of detention. Furthermore, the nature and circumstances of the charged offenses include rape and forced sexual conduct, which is violent conduct in violation of the victims' safety

5

and bodily integrity. The seriousness and the violent nature of the offenses Mr. Harvel is charged with, and for which he could face a lifetime of incarceration, weighs heavily against his release.

Mr. Harvel's history and characteristics—family ties, employment, and lack of criminal history—do not overcome the weight of the other three factors, particularly given the nature and circumstances of the charged offenses.

(*Id.*)

Harvel now moves to reopen the detention hearing to introduce new evidence and asks to be released to home confinement pending trial. (Doc. No. 77.)

## II. Legal Standard

A hearing regarding pretrial detention under the Bail Reform Act "may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). This is a two-step analysis.

First, the movant must establish that the information that is the basis for the motion "was not previously known to him." *United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *1 (6th Cir. May 21, 2020). "Courts interpret this requirement strictly, requiring a showing of truly changed circumstances or a significant event." *Id.* (citing *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991) (per curiam); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989); *United States v. Peralta*, 849 F.2d 625, 626−27 (D.C. Cir. 1988) (per curiam)). Second, the movant must show that the new information is material to the detention question. In this context, "new evidence is material if there is a reasonable probability that the initial determination would have been different." *United States v. Bills*, No. 3:19-CR-00069, 2019 WL 1901643, at *4 (M.D. Tenn. Apr.

6

29, 2019) (citing *United States v. Havens*, 487 F.Supp.2d 335, 339–40 (W.D. N.Y. 2007); *United States v. Avellino*, 136 F.3d 249, 256 (2nd Cir. 1998)).

**III.     Analysis**

Harvel offers three reasons to reopen his detention hearing: (1) his father-in-law's medical condition has deteriorated significantly and his assistances is needed to provide care; (2) his own diabetes is not being well-managed in detention; and (3) he now has the opportunity to live in Carthage, Tennessee, with his son if released.

The first two reasons were considered at the initial detention hearing. Harvel's wife testified to her father's failing health and the assistance Harvel provided in his care. Harvel also offered evidence regarding his diabetes and his difficulty managing its effects, including offering proof of an ulcer on his right foot that he was treating at home. At best, the new evidence Harvel now offers is that the circumstances surrounding these factors have intensified—his father-in-law's health has worsened and his wife is no longer able to manage his care alone, and Harvel is having difficulty maintaining a diet appropriate for his diabetes while in custody.

The third reason has not been considered. Harvel's son moved to Carthage, Tennessee, after the initial detention hearing; thus, the availability of a release condition of Harvel living with his son outside of Cumberland County and confined to home incarceration is a truly changed circumstance. *Bothra*, No. 20-1364, 2020 WL 2611545, at *1. Harvel argues that this proposed condition will address the Court's findings regarding the nature and seriousness of the danger to any other person or the community because Harvel will be released to a different community than the one in which the charged conduct is alleged to have taken place.[2] That argument assumes that

---

2     As the United States notes, releasing Harvel to home incarceration at his son's house will not allow him to assist in the care of his father-in-law, negating that basis for Harvel's motion.

the danger to any person or the community presented by Harvel's release depends upon him being in the same town as the identified victims.[3] But the nature of the danger to others—including, but not limited to, the fear of retaliation expressed by the identified victims—is not materially affected by Harvel being released to home incarceration in a nearby community.[4] The proposed release condition also does not address the nature and circumstances of the charged offenses or the evidence of dangerousness, factors that Judge Campbell found to "weigh[] heavily against [Harvel's] release." (Doc. No. 38.)

## IV.     Conclusion

For these reasons, the Court finds that the additional evidence presented does not materially alter the Court's prior decision that the United States met its burden to show by clear and convincing evidence that no condition or set of conditions of release would guarantee the safety of any other person or the community. Harvel's motion to reopen the detention hearing (Doc. No. 77) is DENIED.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

---

[3] Carthage, Tennessee, is approximately 70 miles from Crossville, Tennessee.

[4] The record does not reflect whether the "community" in which the allege victims live is limited to Crossville, Tennessee.