**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE,
NORTHEASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 2:21-cr-00005** |
| *vs.* | **Judge Campbell** |
| **MICHAEL HARVEL** | |

**DEFENDANT'S OMNIBUS MOTION IN LIMINE**

Defendant Michael Harvel moves the Court to exclude the following:

**1. Testimony of accusing witnesses 9–14 pursuant to Fed. R. Evid. 413 or 404(b).**

The government intends to introduce evidence of six accusing witnesses not named in the indictment either pursuant to Fed. R. Evid. 413 or 404(b). *See* Doc. 70. The Court should exclude this evidence on the following grounds.

**A. Fed. R. Evid. 413 violates the Due Process Clause by permitting the introduction of propensity evidence.**

The introduction of evidence violates due process if it "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 353 (1990) (internal quotation marks and citation omitted). The government proposes to introduce evidence of six uncharged sexual assaults pursuant to Rule 413. Rule 413 permits "the admission of similar prior bad act evidence in sexual assault…cases to show the propensity of the defendant to commit the crime charged." *United States v. Stout*, 509 F.3d 796, 801 (6th Cir. 2007). Introducing this "other acts" evidence solely to prove

Mr. Harvel's propensity to commit the crime charged is "extremely unfair" because the inadmissibility of propensity evidence *qua* propensity evidence is a "fundamental conception[] of justice" predating the Revolution by more than a hundred years. The Court should therefore preclude the government from introducing any evidence pursuant to Rule 413.

The inadmissibility of propensity evidence is a fundamental and longstanding rule of American law. *See, e.g., Michelson v. United States*, 335 U.S. 469, 475 (1948) ("Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt."); Mark A. Sheft, *Federal Rule of Evidence 413: A Dangerous New Frontier*, 33 Am. Crim. L. Rev. 57, 60 (1995) ("For some three hundred years, Anglo-American jurists and commentators have purported to consider legally irrelevant the use of uncharged misconduct evidence to demonstrate the evil character or criminal propensities of the defendant.") (collecting cases); Louis M. Natali, Jr. & R. Stephen Stigall, *"Are You Going to Arraign His Whole Life?": How Sexual Propensity Evidence Violates the Due Process Clause*, 28 Loy. U. Chi. L.J. 1, 13–14 (1996) ("The settled mode of proceeding in Anglo-American jurisprudence is prohibition of propensity evidence to prove action in conformity with a particular character trait. This ban on propensity evidence has been firmly and historically established since at least the seventeenth century in England and, as evidenced in case law and state and federal codes of evidence, has had continuing validity

to the present. This centuries-old rule has therefore become firmly embedded in the principles underlying the Due Process Clauses. It is a fundamental conception of how defendants should be tried in American courtrooms.") (collecting cases); Jason L. Mccandless, *Prior Bad Acts and Two Bad Rules: The Fundamental Unfairness of Federal Rules of Evidence 413 and 414*, 5 Wm. & Mary Bill Rts. J. 689, 692 (1997) ("The rule against using character evidence to prove that a person behaved in conformity with his or her character or 'propensity' is a longstanding rule of evidence that has existed since the latter part of the seventeenth century.") (collecting cases).

When Congress adopted Rules 413–415, it invited the Judicial Conference of the United States to make an alternative recommendation. 159 F.R.D. 51, 52. The Judicial Conference almost unanimously opposed the rules' adoption and urged Congress to reconsider the rules because they "could diminish significantly the protections that have safeguarded persons accused in criminal cases and parties in civil cases against undue prejudice," which "protections form a fundamental part of American jurisprudence and have evolved under long-standing rules and case law." *Id.* at 53. The Ninth Circuit summarized the history of the rule against propensity evidence thus:

> The use of "other acts" evidence as character evidence is not only impermissible under the theory of evidence codified in the California rules of evidence (Cal.Evid.Code § 1101 (West Supp.1993) and the Federal Rules of Evidence (Fed.R.Evid. 404(b)), but is contrary to firmly established principles of Anglo-American jurisprudence. In 1684, Justice Withins recalled a prior case in which the court excluded evidence of any forgeries, except the one for which the defendant was standing trial. *Hampden's Trial*, 9 How.St.Tr. 1053, 1103 (K.B. 1684). Similarly, in *Harrison's Trial,* the Lord Chief Justice excluded evidence of a prior wrongful act

of a defendant who was on trial for murder, saying to the prosecution: "Hold, what are you doing now? Are you going to arraign his whole life? Away, away, that ought not to be; that is nothing to the matter." 12 How.St.Tr. 834 (Old Bailey 1692). Early American courts retained the rule against using "other acts" evidence as character evidence to show action in conformity therewith. *See, e.g., Rex v. Doaks,* Quincy's Mass.Reports 90 (Mass.Super.Ct.1763) (excluding evidence of former acts of lasciviousness from the trial of a defendant accused of keeping a bawdy house); *Boyd v. United States,* 142 U.S. 450, 458, 12 S.Ct. 292, 295, 35 L.Ed. 1077 (1892) (finding that admission of prior crimes committed by defendants so prejudiced their trial as to require reversal). As acknowledged by the Supreme Court in *Brinegar v. United States,* 338 U.S. 160, 174, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949):

> Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard. These rules are historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions, with resulting forfeitures of life, liberty and property.

The rule against using character evidence to show behavior in conformance therewith, or propensity, is one such historically grounded rule of evidence. It has persisted since at least 1684 to the present, and is now established not only in the California and federal evidence rules, but in the evidence rules of thirty-seven other states and in the common-law precedents of the remaining twelve states and the District of Columbia.

*McKinney v. Rees*, 993 F.2d 1378, 1380–1381 (9th Cir. 1993), *as amended* (June 10, 1993).

Rule 413 intentionally abrogates this ancient, fundamental rule of Anglo-America law by permitting "the admission of similar prior bad act evidence in sexual assault…cases to show the propensity of the defendant to commit the crime charged." *Stout*, 509 F.3d at 801. By allowing the admission of "other acts" solely to prove propensity, Rule 413 creates a serious "danger of convicting a criminal defendant for past, as opposed to

charged, behavior or for being a bad person." 159 F.R.D. at 53. The anti-propensity rule recognizes that bad character evidence "weigh[s] too much with the jury and…so over-persuade[s] them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson*, 335 U.S. 475–476. Rule 413 disregards that fundamental fairness principle. As the Fourth Circuit held in an appeal of a rape conviction:

> The rule which thus forbids the introduction of evidence of other offenses having no reasonable tendency to prove the crime charged, except in so far as they may establish a criminal tendency on the part of the accused, is not a mere technical rule of law. It arises out of the fundamental demand for justice and fairness which lies at the basis of our jurisprudence. If such evidence were allowed, not only would the time of courts be wasted in the trial of collateral issues, but persons accused of crime would be greatly prejudiced before juries and would be otherwise embarrassed in presenting their defenses on the issues really on trial. In the case at bar for instance, not only was the trial prolonged by controversies foreign to the issue before the jury, but accused was called upon to defend another charge of rape, while his hands were full defending the charge contained in the indictment, and the jury was necessarily given the impression, although his character had not been placed in issue, that he was a bad man who had been guilty of other crimes and who might well be convicted on that account.

*Lovely v. United States*, 169 F.2d 386, 389 (4th Cir. 1948).

Defense counsel have not found a Sixth Circuit case ruling on a due process challenge to Rule 413. The Second, Eighth, and Tenth Circuits have rejected such challenges. *United States v. Schaffer*, 851 F.3d 166, 177 (2d Cir. 2017); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998); *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998), opinion clarified, No. 96-2285, 1998 WL 133994 (10th Cir. Mar. 25, 1998). These cases rest on two premises: first, due process does not require the anti-propensity rule because the

Supreme Court has not expressly held it does; and second, Rule 403, by empowering the trial court to exclude relevant evidence if the danger of unfair prejudice substantially outweighs its probative value, cures any due process defect in Rule 413. *See Enjady*, 134 F.3d at 1431; *Mound*, 149 F.3d at 801; 851 F.3d at 179.

This reasoning suffers from at least two flaws. **First**, the absence of a Supreme Court case expressly holding that due process requires the anti-propensity rule is irrelevant given the numerous Supreme Court and other authorities assuming that rule is a fundamental principle of Anglo-American jurisprudence. It would equally be absurd to claim that the reasonable doubt standard in criminal cases was not a fundamental requirement of due process until the Supreme Court said so in *In re Winship*, 397 U.S. 358, 364 (1970). Rather, the Supreme Court confirmed what was a longstanding and universally accepted principle. *See id.* at 361–364. The same is true of the anti-propensity rule.

**Second**, Rule 403 cannot save Rule 413 because Rule 403 exists to govern relevant, admissible evidence, but purely propensity evidence—that is, "other acts" evidence offered solely to establish that the defendant has a bad character and acted in conformity with that bad character—is inherently unfairly prejudicial and therefore constitutionally prohibited and inadmissible under Rule 402: "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution…."

The Court should therefore preclude the government from introducing any evidence pursuant to Rule 413 and limit the government to introducing "other acts" evidence pursuant to Rule 404(b), subject to Rule 403.

**B.   Any probative value this evidence has is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence.**

Whether the government attempts to introduce these six accusing witnesses' testimony under Rule 413 or 404(b), the Court should exclude that testimony pursuant to Rule 403 because any probative value it may have is "substantially outweighed by a danger of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The indictment identifies **eight** named accusing witnesses. If those counts are tried jointly, the jury will hear from these eight witnesses. If one witness's claims are tried separately, the government undoubtedly will attempt to call some or all of the other seven witnesses to testify either under Rule 413 or 404(b).[1] Either way, the jury will likely hear from eight witnesses all alleging similar claims of sexual assault or battery in similar circumstances.

---

[1] To the extent the Court grants Mr. Harvel's motion to sever, Mr. Havel contends that the Court should exclude the testimony of the other seven complaining witnesses on the same grounds of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

If the government is permitted to call these six additional witnesses under Rule 413, it will do so to establish Mr. Harvel's propensity to commit sexual crimes. In that case, the testimony of eight named witnesses will give the jury ample evidence from which to draw that inference should it so choose, without piling on six more. The same is true if the government can only call theses six witnesses under Rule 404(b) to show intent, motive, plan, preparation, opportunity, and knowledge: surely eight witnesses' testimony is sufficient evidence to permit that inference if the jury makes it.

The Sixth Circuit interprets unfair prejudice "to mean the undue tendency to suggest a decision based on improper considerations[.]" *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999). "Unfair prejudice…means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee's Notes, cited approvingly in *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 360 (6th Cir. 1997) ("Otherwise relevant evidence may permissibly be excluded if it serves to inflame the passions of the jury."). Thus, for example, it would constitute unfair prejudice for a jury to use "other acts" evidence "to convict a defendant because it is appalled by a prior crime the defendant committed rather than persuaded that he committed the crime charged," or, "uncertain of guilt,…convict a defendant because they think the defendant is a bad person generally deserving of punishment." *United States v. Rogers*, 587 F.3d 816, 822–823 (7th Cir. 2009).

As Mr. Harvel argues in his motion for severance, it is highly likely that hearing the accounts of the eight accusing witnesses named in the indictment will inflame the jury's passions and create a serious risk of conviction based on bad character. Six more such accounts will only add insult to injury. Furthermore, this additional evidence would also confuse the issues and mislead the jury, because it will already have to keep track of eight separate accusations in the indictment. Calling six more witnesses on top of the eight in the indictment will necessarily cause undue delay and waste of time and constitute needless cumulative evidence. The Court should therefore preclude the government from introducing these six additional witnesses' testimony pursuant to Rule 403.

## 2. Inflammatory terminology and irrelevant statistical data.

The government should not be permitted to present evidence or argument referring to an alleged "sexual assault crisis" or "sexual assault epidemic" or similar emotive terms. Nor should the government be permitted to present evidence or argument referring to data about:

- The number of people harmed by sexual assault.

- The impact of sexual assault on society; or

- The amount of unreported sexual assault.

Such inflammatory terminology and irrelevant data encourage the jury to act out of anger and a sense of emergency rather than a careful analysis of the evidence and fair-minded application of the law.

3.  **Emotional impact on the accusing witnesses.**

The government should not be permitted to present evidence or argument referring to the emotional impact of the alleged assaults on the accusing witnesses or their families or friends. Such evidence is irrelevant to whether Mr. Harvel committed the alleged crimes and serves only to encourages the jury to act out of anger rather than a careful analysis of the evidence and fair-minded application of the law.

4.  **Referring to accusing witnesses as "victims."**

The Court should prohibit the government from referring to the accusing witnesses named in the indictment or the government's 413/404(b) notice as "victims." Referring to these witnesses as "victims" assumes that there are in fact victims in this case— a fact that government must prove and has yet to prove beyond a reasonable doubt. Without a crime there is no victim, in the normal sense of the word. The premature use of the term "victim" presents a danger of unfair prejudice which substantially outweighs any probative value the use of the term may have. Therefore, with little to no probative value, such references should be excluded. Instead, the Court should require the government to refer to them as "accusing witnesses," "complaining witnesses," or "accusers."

In the alternative, should this Court not grant this request, Mr. Harvel requests the Court to require the government use the modifier "alleged" before each use of the word victim. *See United States v. Williams*, 2010 U.S. Dist. LEXIS 162808 (M.D. Ga. Aug. 12, 2010)

(requiring the government say "alleged" before saying the word "victim" during trial proceedings in addition to giving a limiting instruction on the words use).

**5.      Opinion evidence regarding Mr. Harvel's *mens rea*.**

The government must prove that Mr. Harvel acted "willfully," which in the context of 18 U.S.C. § 242 means acting with "a specific intent to deprive a person of a federal right made definite by decision or other rule of law[.]" *Screws v. United States*, 325 U.S. 91, 103 (1945). Under this standard, "willfulness is proved by evidence that a defendant acted voluntarily with knowledge that his conduct was unlawful, even if he did not know the specific statute violated." *United States v. Bryant*, 528 F. Supp. 3d 814, 818 (M.D. Tenn. 2021) (citations and internal quotation marks omitted).

Under Fed. R. Evid. 704(b), the government may not present expert opinion evidence that Mr. Harvel had the necessary knowledge and intention. Fed. R. E. 704(b) ("In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."); *United States v. Combs*, 369 F.3d 925, 940 (6th Cir. 2004) ("Rule 704(b)…prevents an expert witness from testifying that a defendant in a criminal case did or did not have the requisite mental state or condition constituting an element of the crime charged, as ultimate issues are matters for the trier of fact.").

Under Fed. R. Evid. 701, the government may not present lay opinion evidence that Mr. Harvel had the necessary knowledge and intention unless that opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Yet it "seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'" *Mitroff v. Xomox Corp.*, 797 F.2d 271, 276 (6th Cir. 1986); *United States v. Pinke*, No. CRIM. 09-01-01-JSS, 2009 WL 4432669, at *3 (E.D. Ky. Dec. 2, 2009) ("If a handful of discrete facts form the basis of the opinion, then the witness would be most helpful by simply stating those facts and allowing the jury to form its own opinion. This is especially true when a witness leaps from specific facts to an opinion on an ultimate issue, for such an opinion most threatens to invade the province of the jury.") (internal citations omitted) (Sutton, Circuit Judge, sitting as district judge by designation).

Mr. Harvel expects the much of the government's evidence will consist of accusing witnesses testifying about sexual conduct the government claims was nonconsensual. The government should not be allowed to elicit opinion testimony from lay witnesses about Mr. Harvel's *mens rea* because such testimony would not be helpful to the jury. Such testimony would be based on "a handful of discrete facts"—in the case of accusing witnesses, the acts comprising the alleged assaults—which means "the witness would be

most helpful by simply stating those facts and allowing the jury to form its own opinion" about what those facts say about Mr. Harvel's state of mind. *Pinke*, No. CRIM. 09-01-01-JSS, 2009 WL 4432669, at *3.

The Court should therefore prohibit the government from offering expert or lay opinion testimony about Mr. Harvel's knowledge, intention, and other state of mind or *mens rea*.

6. **Opinion testimony analyzing, applying, or interpreting the law.**

Under Fed. R. Evid. 704(a), opinion testimony otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact. However, Fed. R. Evid. 704(a) does not permit a witness to offer conclusions of law: "An expert may testify as to his opinion on an ultimate issue of fact. An expert may not, however, merely tell the jury what result to reach. A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (internal citations omitted).

Under 18 U.S.C. § 242, the government must prove that Mr. Harvel acted "under color of…law." Thus, the government should not be permitted to present opinion evidence constituting conclusions of law, including without limitation conclusions of law to the effect that Mr. Harvel was acting "under color of…law."

7.  **Improper 404(b) evidence.**

The Court should preclude the government from soliciting or introducing Fed. R. Evid. 404(b) evidence that has not been noticed or alleged as part of the indicted conduct.

8.  **Inadmissible Hearsay.**

The Court should preclude the government from soliciting or introducing evidence that constitutes or includes inadmissible hearsay. To the extent the government intends to introduce email chains or other documentary evidence containing statements by multiple people, some of which statements may be admissible and others inadmissible hearsay, the Court should require the government to excise portions that contain inadmissible hearsay from their pre-marked exhibits and provide defense counsel with those excised exhibits for review before offering them into evidence.

9.  **Any expression of the prosecutor's personal belief that Mr. Harvel is guilty of the offenses with which he has been charged.**

10. **Any expression of any law that is not included in the Court's charge to the jury.**

11. **Any reference to public opinion if Mr. Harvel is acquitted.**

12. **Any reference to the lifestyle of Mr. Harvel, his family members, or any witness called by him.**

13. **Any reference to community standards of conduct or general morality, which are irrelevant and so vague that they do not fall within the purview of common knowledge.**

14. **Any reference to the Defendant by anything other than his given name and title, *i.e.*, "Mr. Michael Harvel" or "Mr. Harvel."**

15. **Any reference to the cost of the trial at the expense of the government, including without limitation in connection with a plea to the jury of the necessity of reaching a verdict and not becoming a "hung" jury.**

**16. Any reference to this motion or argument that Mr. Harvel has moved to prevent information being elicited at trial.**

## CONCLUSION

Mr. Harvel therefore requests the Court to grant the relief described above and any other necessary or proper relief.

                                                                  Respectfully submitted:

/s/ Patrick McNally
Patrick T. McNally (TN BPR # 010046)
MCNALLY LAW
40 Burton Hills Boulevard, Suite 200
Nashville, Tennessee 37215
Telephone 615-480-8921
attorney@patrickmcnallylegal.com

/s/ W. Justin Adams
W. Justin Adams (TN BPR # 022433)
SPENCER FANE LLP
511 Union Street, Suite 1000
Nashville, Tennessee 37219
Telephone: 615-238-6300
Facsimile: 615-238-6301
wjadams@spencerfane.com

Counsel for Michael Harvel

# CERTIFICATE OF SERVICE

I certify that on November 15, 2022, a copy of the foregoing was served via the Court's electronic case filing system to the following:

Brooke Schiferle, Esq.
Assistant U.S. Attorney
110 8th Avenue South, Suite A-961
Nashville, Tennessee 37203
Brooke.Schiferle@usdoj.gov

Michael J. Songer, Esq.
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
Michael.Songer@usdoj.gov

                                              /s/ W. Justin Adams